UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHERINE AJAERO,

                                    Plaintiff,

        - against –

TAMARA VASQUEZ, SHYWAM WADHWA,
and S&P GLOBAL INC.,

                                    Defendants.

Index No.

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Plaintiff CATHERINE AJAERO ("Plaintiff" or "AJAERO"), by and through her attorneys SHEGERIAN & ASSOCIATES, as and for her Complaint against Defendants TAMARA VASQUEZ ("Defendant" or "VASQUEZ"), SHYWAM WADHWA ("Defendant" or "WADHWA"), and S&P GLOBAL INC. ("Defendant" or "S&P"), states and alleges on information and belief as follows:

**PRELIMINARY STATEMENT**

1.      This is an action by Plaintiff, AJAERO, whose employment with S&P was wrongfully terminated and discriminated against for her Race/Color, Gender, and was Retaliated against in violation of: (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments ("Title VII"); (b) the New York City Administrative Code §8-107 et seq. ("NYC Human Rights Law"), and (c) the New York State Executive Law § 296 et seq. ("NYS Human Rights Law").

2.      Plaintiff brings this action against Defendants for economic, non-economic, compensatory, and punitive damages, pre-judgment interest, and costs and reasonable attorneys' fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this is an action seeking redress for the violation of Plaintiff's rights under federal law.

4.     Plaintiff respectfully requests that this Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein, and as against all parties that are so related to claims in this action within the original jurisdiction of this court that are formed as part of the same case or controversy.

5.     Venue herein is proper for the United States District Court for the Southern District of New York pursuant to 28. U.S.C. § 1391, 1391 because a substantial part of the events or omissions giving rise to this action, including employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

6.     Within the time prescribed by law, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of federal law including, but not limited to, 42 U.S.C. §§ 2000e *et seq.* (Title VII), the Civil Rights Act of 1866, 42 U.S.C. § 1981, Civil Rights Act of 1991, Fair Employment and Housing Act Government Code §§ 12900, 12940-12941, *et seq*, annexed hereto as **Exhibit "A."**

7.     The EEOC subsequently issued Plaintiff a Notice of Right to Sue, received on or around June 23, 2021, attached hereto as **Exhibit "B."**

8.     On or around September 21, 2021, a copy of this Complaint was mailed to the New York State Division of Human Rights, the New York State Department of Labor, the New York City Commission on Human Rights, the City of New York Corporation Counsel, and the Attorney General Office thereby satisfying the notice requirements of the New York State Human Rights

Law, the New York City Human Rights Law, and N.Y. Civ. Rights § 40-d.

## JURY DEMAND

9.      Pursuant to the Seventh Amendment of the United States Constitution and pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury on all issues and claims set forth in this Complaint.

## PARTIES

10.     *Plaintiff:*  Plaintiff AJAERO is, and at all times mentioned in this Complaint was, a resident of the State of New York.

11.     *Defendants:* Defendant VASQUEZ is, and at all times mentioned in this Complaint was, on information and belief, a resident of the State of New York.

12.     Defendant WADHWA is, and at all times mentioned in this Complaint was, on information and belief, a resident of the State of New Jersey.

13.     Defendant S&P, is, and at all times mentioned in this Complaint was, authorized to operate by the State of New York and the United States government and authorized and qualified to do business in the County of New York.  Defendant's place of business, where the following causes of action took place, was and is, in the County of New York.

14.     *Relationship of Defendants:*  All Defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under federal law including, but not limited to, Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments, the NYC Human Rights Law, and the NYS Human Rights Law.  All Defendants were responsible for the events and damages alleged herein, including on the following bases:  (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining Defendants and, in committing the acts

alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another.  Defendants exercised domination and control over one another to such an extent that any individuality or separateness of Defendants does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all Defendants were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

15.     VASQUEZ both directly and indirectly employed Plaintiff as defined by federal law including, but not limited to, Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments, the NYC Human Rights Law, and the NYS Human Rights Law.

16.     WADHWA both directly and indirectly employed Plaintiff as defined by federal law including, but not limited to, Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments, the NYC Human Rights Law, and the NYS Human Rights Law.

17.     S&P both directly and indirectly employed Plaintiff as defined by federal law including, but not limited to, Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments, the NYC Human Rights Law, and the NYS Human Rights Law.

18.     In addition, Defendants VASQUEZ, WADHWA, and S&P compelled, coerced, aided, and abetted the retaliation and discrimination, which is prohibited under federal law including, but not limited to, Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et

seq., and its Amendments, the NYC Human Rights Law, and the NYS Human Rights Law.

19.    Finally, at all relevant times mentioned herein, all Defendants acted as agents of all other Defendants in committing the acts alleged herein.

## STATEMENT OF FACTS

20.    *Plaintiff's hiring:* Plaintiff AJAERO was a dedicated employee of S&P Global Inc. from January 2008 until her termination on January 26, 2020.  Plaintiff was a Senior Data Analyst.

21.    *Plaintiff's job performance:* Plaintiff AJAERO was an exemplary employee of S&P GLOBAL INC., receiving "Breakthrough" and "Excellent" performance ratings in 2013, 2014, and 2015. Plaintiff met or exceeded performance expectations from 2016 to 2018. Despite meeting performance goals on a yearly basis and receiving consistently positive reviews, Plaintiff was given marginal promotions and merit increases compared to Asian men of similar tenure and position.

22.    *Plaintiff's protected status and activity:* Plaintiff was subjected to discrimination based on her race and/or color (African American), her gender (Female), and retaliated against for her good faith complaints.

23.    *Defendants' adverse employment actions and behavior:* On January 4, 2016, Defendant VASQUEZ emailed a strong recommendation for Plaintiff to be promoted to Product Manager.  VASQUEZ wrote, "She is a senior data analyst with 8+ years of proven success… Often delivers what you want in a format better than what you asked for and does so super quickly… Has deep knowledge of the PE industry and is a subject matter expert… Understands data and customer paint points equally well. Not just a problem identifier but also a problem solver… For the past 5+ years she has worked effectively with other internal product managers, Columbia University Academia, and content managers and Business Technology

Analysts, to build a roadmap of capabilities and features that will enhance the usability and efficiency of our Private Equity Fund content. She has lead a team of 20+ Columbia University graduate students with Investment Banking, Private Equity, Engineering and Data Science proficiencies…"

24.     Plaintiff, despite receiving stellar performance reviews from 2013 to 2015 and exceeding performance goals in 2016 and 2018, Plaintiff received marginal merit increases and promotions compared to Asian men who were Senior Research Analysts, with the same Tenure as Plaintiff, in the same department.

25.     Upon information and belief, these individuals included, Ajit Singh Talwar, Yogesh Sardana, and Vaibhav Tiwari.

26.     In, or about, August 2018, Defendant WADHWA told Plaintiff that she was the only person on the team not sent to an Operations Convention meeting in Dubai due to lack of funds.

27.     In, or about, October 11, 2018, Plaintiff notified her Manager, Defendant WADHWA, that a project should be closed out because Manager, Vinay Arora, was walking back from the $600,000.00 cost savings estimated to an estimation of about $50,000.00.

28.     Plaintiff reported these unethical business practices of Manager, Vinay Arora, to S&J's Company Hotline and to Plaintiff's direct boss WADWHA verbally and in writing.

29.     Plaintiff described these practices as "Company sabotage" and explained that Vinay Arora had agreed to the financial benefits of a project but when Plaintiff became the lead on the project, Arora changed his mind and stated that there were no savings to be had on the project.

30.     Upon information and belief, Manager Arora was prioritizing this project as important and suddenly devalued it after leadership was changed to Plaintiff.

31.     Defendant WADHWA informed Plaintiff that he discussed the situation with Arora and that it would not happen again.

32.     In regard to said complaint, Arora retaliated against Plaintiff by disparaging Plaintiff to WADHWA.

33.     In turn, WADHWA relied on the disparagement to give Plaintiff a negative performance rating.

34.     After reporting this complaint, Plaintiff's situation at work changed.  At the time, Plaintiff was the only African American female in Plaintiff's entire department.

35.     On March 4, 2019, Plaintiff also reported the complaint to the Company Hotline.

36.     On, or about, November 15, 2018, Defendant WADHWA told Plaintiff on a phone call that she needed to give up her desk on December 14, 2019, to make room for a new hire (Christopher Liu).

37.     Plaintiff was selected because she worked from home 2-3 days a week.  A similar situated individual, Chandani Patel (of Indian Origin), was not asked to give up her desk despite working very limited times in the office.

38.     In December 2018, Maintenance Facilities confirmed that there were two open desks on the floor that could have been assigned to Mr. Liu.  To further support this allegation, in April 2019, Mr. Liu asked why he was given Plaintiff's desk as he noticed an entire row of empty desk around him.

39.     On, or about March 12, 2019, Plaintiff received the lowest bonus in twelve (12) years with S&P and received her first negative performance rating.

40.     Plaintiff's average bonus was $12,500.00 and in 2019 it was reduced to $2,700.00.

41.     Plaintiff also received a lousy merit increase of 1.5%.

42.     Prior to the negative performance review, on March 7, 2019, WADHWA never mentioned that he was giving Plaintiff a negative performance rating.

43.     On March 12, 2019, after receiving the negative performance review, Plaintiff responded to Defendant WADHWA that he had stated in the past that Plaintiff was the hardest worker on the team and that Harry Van Mienes (WADHWA's Manager) told WADHWA that Plaintiff was "grossly underpaid".

44.     On March 20, 2019, Plaintiff met with WADHWA and strongly opposed the negative rating as meritless and not factually accurate.

45.     Despite multiple efforts to receive support for the negative rating, Defendant WADHWA or Human Resources never gave Plaintiff evidence.

46.     On, or about, March 21, 2019, Defendant WADHWA, in a conference room meeting, questioned Plaintiff's SQL/Technical Skills.

47.     Plaintiff reminded WADHWA that she had over ten (10) hours of internal SQL Training and that if WADHWA felt Plaintiff needed more training, she would take a day off to go get training.  Acknowledging the request, WADHWA refused and directed Plaintiff to take an hour on the job to "improve" skills.

48.     On, or about, April 10, 2019, Plaintiff sent an email expressing interest to be considered for the position of her superior, WADHWA, at the time.

49.     Plaintiff received a vague and dismissive response from Defendant VASQUEZ.

50.     VASQUEZ notified Plaintiff there were no jobs available.  VASQUEZ went onto promote and hire ten (10) employees during that year, including two (2) positions that she hired

outside of formal posting procedures.  Both of which were Asian females.

51.    In May 2019, Plaintiff reported this in a letter to Dimitra Manis, who was the Chief People Officer.

52.    Plaintiff also emailed a copy to Belinda Palmer of the email from Defendant VASQUEZ stating that there were zero posted jobs.

53.    Furthermore, in April 2020, Plaintiff reported the incident to Rahim Babar of Human Resources.

54.    In April 2019, Plaintiff found a benefits statement that reported her salary of $79,467 being below the reported midpoint of her peers at $90,0000 with a max salary of $129,200.

55.    On, or about, June 26, 2019, Plaintiff sent a request for the past seven (7) years of statements to the Benefit Coordinator team.

56.    On, or about, July 8, 2019, Plaintiff received a statement that was edited and now reflected a mid-point salary of $78,100 and a maximum salary of $105,000.

57.    After reporting to Belinda Palmer, Plaintiff was told that S&P removed a specialist employee from the pool.  To date, Plaintiff has not received the prior seven (7) years of statements.

58.    On, or about, July 8, 2019, Plaintiff sent an email to Belinda Palmer regarding the difference in job grades between her peers and herself is discriminatory.

59.    On April 21, 2020, Plaintiff also reported this to Rahim Babar in Human Resources and he asked for evidence from Plaintiff, which Plaintiff did.

60.    In June and August of 2019, Defendant Vasquez began an email campaign of issuing multiple reprimands for taking an hour to schedule a meeting, for taking twenty minutes to announce Plaintiff's self at Skype Meetings, and multiple emails berating Plaintiff about her

information sharing with colleagues.  All which Plaintiff reported to the Company Hotline on August 21, 2021, and the NYC Department of Labor.

61.     On, or about August 19, 2019, Plaintiff requested a floating holiday for medical reasons which was scheduled for August 21, 2019.

62.     Nonetheless, Defendant VASQUEZ scheduled a meeting and gave Plaintiff 6-hours' notice to attend the meeting.  Despite being sick, Plaintiff attended the meeting.

63.     That evening, Plaintiff received an email that Plaintiff's request for sick leave was denied as untimely.

64.     However, Defendant VASQUEZ took a day off work the day before her requested day with less than 24 hours' notice.

65.     Plaintiff reported this to the Company Hotline on August 21, 2019 and the NYC Department of Labor.

66.     On, or about, August 29, 2019, Defendant VASQUEZ unreasonably denied Plaintiff's request for tuition reimbursement to take Harvard's Information Technology Finance and Communication class.  Another employee, Amy Gleason was taking classes at the same school, and this was approved by S&P.

67.     Upon information and belief, Plaintiff became to know that S&P Global UK has the highest bonus pay gap between men and women and they have the highest number of women working in the lower quartile salaries.

68.     On, or about, October 15, 2019, Plaintiff applied for the Data Stewardship – Senior Project Manager position.

69.     Upon information and belief, Defendant VASQUEZ, based on the companies' position statement to Plaintiff's EEOC Charge, that this position was offered on October 8, 2019

to Supreet Ahluwalia (Asian Woman), while the posting was publicly available and Plaintiff's application was still in review by S&P's Talent Acquisition Team.

70.     Plaintiff was notified on October 25, 2019, by David Callaghan (Senior Recruiter of Talent Acquisition, that Plaintiff was not selected as a finalist for the position.

71.     Supreet Ahluwalia, at the time, had nine (9) months working experience at the company, while Plaintiff had twelve (12) years of experience.  This was reported to the EEOC in April 2020.

72.     In November 2019, Plaintiff found public records that S&P signed a labor condition with the U.S. Department of Labor while sponsoring a VISA employee, promising to pay U.S. Workers an actual wage rate of $115,000.00 for the Senior Data Associate, Data Stewardship & Analysis Department, during 2015 to 2018.

73.     During this time, Plaintiff's base salary was significantly lower at a rate of approximately $77,000.00.

74.     In December 2019, Plaintiff I again rejected to take classes at Harvard due to Defendant VASQUEZ's failure to respond.

75.     In January 2020, VASQUEZ emailed Plaintiff that she was subject to review and a formal submission of a carryover request before Plaintiff could be granted vacation days earned in 2019.

76.     Other employees were not subjected to a similar review and were able to take their days immediately in 2020.  Three Asian employees carried over days and were allowed to use them in 2020.  Plaintiff reported this to the Company Hotline on March 19, 2020.

77.     In February 2020, Lalaine Yonashiro was given one of the positions Plaintiff expressed interest in.  Plaintiff reported this to the EEOC.

78.     Upon information and belief, Plaintiff received a partial achievement performance rating in 2019 and another reduced bonus in direct retaliation to Plaintiff's complaints.

79.     On, or about, July 8, 2020, S&P awarded VASQUEZ to the Head of Diversity. The same day, Plaintiff was denied a promotion to Senior Manager.  Larisa Whitmore was given the position.

80.     Regardless of Plaintiff's Complaints, VASQUEZ was awarded with a promotion.

81.     On January 26, 2020, Plaintiff received a meeting invitation for a confeidential conference call with an unknown number of participants by Abishek Tomar.

82.     *Termination of Plaintiff's Employment*: On, or about, January 26, 2020, Plaintiff was told that her position was eliminated in relation to a recent merger.

83.     Plaintiff asked Larisa Whitmore if she knew about Plaintiff's termination.  Larisa was notified a few hours prior and was apologetic and wanted to stay connected with Plaintiff.

84.     Erin Paoletti notifies Plaintiff that January 26, 2020 was her last day of employment and that her computer access would be blocked.

85.     Upon information and belief, Plaintiff was discriminated against, and her termination was in response to Plaintiffs' good faith complaints.

86.     After Plaintiff's termination, two Asian Woman have taken over Plaintiff's responsibilities in the same department.

87.     Plaintiff was offered approximately one (1) years severance following her termination in which she rightfully rejected.

88.     *Economic damages:*  As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest

on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

89.     *Non-economic damages:*  As a consequence of defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

90.     *Punitive damages:*  The conduct of Defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages under Federal Law. In addition, Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to punitive damages against Defendants under State Law.

91.     *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments for Race/Color and Gender Discrimination/Disparate Treatment - Against All Defendants**

92.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

93.     Defendants' conduct, as alleged, violated Title VII, U.S.C.A. § 2000e et seq and its Amendments. Defendants committed unlawful employment practices, including by the following bases for liability:

- Taking adverse employment actions against Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's Race/Color and/or Gender in violation of Title VII, U.S.C.A. § 2000e et seq and its Amendments;

- Plaintiff's Race/Color and/or Gender was a motivating factor in, among other things, Defendants' decision to ignore Plaintiff's good faith complaints about discrimination, failing to promote Plaintiff, decreasing Plaintiff's bonuses, providing unjustified performance reviews, terminating Plaintiff and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's Race/Color and Gender.

94.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

95.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

96.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

97.     Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against Defendants.

### SECOND CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., and its Amendments for Retaliation- Against All Defendants**

98.     Plaintiff AJAERO hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

99.     Plaintiff AJAERO engaged in protected activities when she made multiple complaints of discrimination to Defendant S&P's management *i.e.* Tamara Vasquez and Shywam

Wadhwa.

100.    Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: to ignore Plaintiff's good faith complaints about discrimination, to fail to promote Plaintiff, fail to address Plaintiff's pay discrepancy, fabricating write-ups against Plaintiff and, ultimately, terminating Plaintiff.  Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

101.    By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of Title VII.

102.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities, and other prerequisites of employment.

103.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation, and damage to reputation.

### THIRD CAUSE OF ACTION
**Violation of New York City Human Rights Law for Race/Color and Gender Discrimination Against All Defendants**

104.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

105.    The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

106.     Defendants' conduct, as alleged, violated the New York City Human Rights Law, including but not limited to, §8-107 of the New York City Administrative Code. Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

i.       Taking adverse employment actions against the Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's Race/Color, Gender, and/or other good faith complaints in violation of the New York City Human Rights Law, including but not limited to, §8-107(1) of the New York City Administrative Code;

ii.      Failing to promote Plaintiff despite her experience above and beyond her counterparts;

iii.     Providing Plaintiff with false information regarding new job posts;

iv.      Cutting Plaintiff's bonuses;

v.       Providing Plaintiff with unjustified performance reviews;

vi.      Denying Plaintiff's continuing education;

vii.     Terminating Plaintiff;

viii.    Harassing Plaintiff and/or creating a hostile work environment in whole or in part on the basis of Plaintiff's Race/Color, Gender, and/or good faith complaints in violation of the New York City Human Rights Law, including but not limited to, §8-107(1) of the New York City Administrative Code;

ix.      Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, Plaintiff's Race/Color and/or Gender, other good faith complaints, and/or other protected characteristic or activity in violation of the New York City Human Rights Law,

including but not limited to, §8-107(1) of the New York City Administrative Code;

x.      Plaintiff's Race/Color, Gender, and/or good faith complaints protected by the New York City Human Rights Law, including but not limited to, §8-107(1) of the New York City Administrative Code, were motivating factors in Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff.

106.    Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in his civil rights and/or to harassment.

107.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

108.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

109.    As a proximate result of Defendants' creation of a hostile work environment based on discrimination that harmed Plaintiff, Plaintiff is entitled to compensatory damages.

110.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

111.    Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against

Defendants.

**FOURTH CAUSE OF ACTION**
**Violation of New York City Human Rights Law for Retaliation Against Plaintiff for Opposing Discrimination and Harassment on the Basis of Race/Color and/or Gender**

112.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

113.    At all times herein mentioned, the New York City Human Rights Law, specifically §8-107 of the New York City Administrative Code, was in full force and effect and was binding on Defendants. This law prohibits discrimination on the basis of Race/Color and Gender.

114.    The New York City Administrative Code §8-107(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter[.]"

115.    Defendants' conduct, as alleged, violated the New York City Human Rights Law, specifically New York City Administrative Code §8-107(7), in that Defendants retaliated against Plaintiff by harassing and ultimately terminating Plaintiff's employment for opposing Defendants' failure to provide rights guaranteed under the New York City Human Rights Law, including the right for all employees to be free from discrimination and harassment based on Race/Color and/or Gender.

116.    As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained losses of earnings and other employment benefits.

117.    As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to Plaintiff's damage in a sum according to proof.

118. As a proximate result of Defendants' retaliation against Plaintiff, Plaintiff is entitled to compensatory damages.

119. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

120. Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, warranting punitive damages against Defendants.

**FIFTH CAUSE OF ACTION**
**Violation of New York State Human Rights Law for Race/Color and Gender**
**Discrimination – Against All Defendants**

121. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

122. The New York Executive Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer or licensed agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to bar or to discharge from employment such individual in compensation or in terms, condition or privileges of employment."

123. Defendants' conduct, as alleged, violated the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296. Defendants committed unlawful employment practices, including but not limited to, the following bases for liability:

- Taking adverse employment actions against Plaintiff such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, ignoring Plaintiff's good faith complaints, failing to promote Plaintiff, decreasing Plaintiff's bonuses, providing unjustified performance reviews, terminating Plaintiff and/or otherwise discriminating against

Plaintiff, in whole or in part on the basis of Plaintiff's Race/Color and Gender, and/or other good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Harassing Plaintiff and/or creating a hostile work environment in whole or in part on the basis of Plaintiff's race/color and/or good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on, Plaintiff's Race/Color, Gender, and/or other good faith complaints, and/or other protected characteristic or activity in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Plaintiff's Race/Color, Gender, and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff including, but not limited to, ignoring Plaintiff's good faith complaints, failing to promote Plaintiff, decreasing Plaintiff's bonuses, providing unjustified performance reviews, and terminating Plaintiff.

124.    Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in her civil rights and/or to harassment.

125.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

126.    As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

127.    Defendants' conduct constitutes malicious, willful, wanton and/or reckless

indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages against Defendants.

### SIXTH CAUSE OF ACTION
**Violation of New York State Human Rights Law for Retaliation for Opposing Discrimination and Harassment Based on Race/Color—Against All Defendants**

128.    The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

129.    Defendants' conduct, as alleged, violated the New York State Human Rights Law, specifically N.Y. Exec. Law sections 296(1)(e) and 296(7), and Defendants committed unlawful employment practices, including by the following, separate bases for liability: retaliating against Plaintiff by ignoring Plaintiff's good faith complaints, failing to promote Plaintiff, decreasing Plaintiff's bonuses, providing unjustified performance reviews, terminating Plaintiff, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's Race/Color, Gender, and/or other good faith complaints and ultimately terminating Plaintiff for seeking to exercise rights guaranteed under the New York State Human Rights Law and/or for opposing Defendants' failure to provide such rights, including the right to be free from discrimination and harassment based on race and color, in violation of New York State Human Rights Law sections 296(1)(e) and 296(7).

130.    Plaintiff is entitled to all available compensation under the New York State Human Rights Law.

131.    Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in her civil rights and/or to harassment.

132.    Under the New York State Human Rights Law, as a proximate result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages in an amount according to proof.

133.    Under the New York State Human Rights Law, as a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, in an amount according to proof.

134.    Under the New York State Human Rights Law, as a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, CATHERINE AJAERO, respectfully requests that this Honorable Court grant judgment, as follows:

A declaratory judgment that the actions, conduct and practices of Defendant(s) complained of herein violated the laws of the United States and State of New York;

An award of damages against Defendant(s), in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

An award of damages against Defendant(s), in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including but not limited to, compensation for Plaintiff's emotional distress;

For general and special damages according to proof;

eb

For exemplary damages, according to proof;

For pre-judgment and post-judgment interest on all damages awarded;

For reasonable attorneys' fees;
For costs of suit incurred;

For an award of punitive damages in an amount to be determined at trial;

For an award of pre-judgment interest on all amounts due;

For such other and further relief as the Court may deem just and proper.

Dated:  September 21, 2021                    SHEGERIAN & ASSOCIATES

*Michael C. Anderson*
_____
Michael C. Anderson, Esq.
*Attorneys for Plaintiff*
CATHERINE AJAERO
90 Broad Street, Suite 804
New York, New York 10004
Tel.: (212) 257-8883
Fax: (212) 804-7299
manderson@shegerianlaw.com