UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
CATHERINE AJAERO,                      :
                                       :
                        Plaintiff,     :        21cv7894 (DLC)
                                       :
            -v-                        :        OPINION AND ORDER
                                       :
S&P GLOBAL INC., TAMARA VASQUEZ, and   :
SHYWAM WADWHA,                         :
                                       :
                        Defendants.    :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff Catherine Ajaero:
Olivia Marie Clancy
Shegerian & Associates
90 Broad Street, Suite 804
New York, NY 10004

For defendants S&P Global Inc., Tamara Vasquez, and Shywam
Wadwha:
Diane Windholz
Laura Victorelli
Jackson Lewis P.C.
666 Third Avenue, 29th Floor
New York, NY 10017

DENISE COTE, District Judge:

    Catherine Ajaero brings this action against her former

employer, S&P Global Inc. ("S&P"), and her former supervisors,

Shyam Wadwha[1] and Tamara Vasquez.  Ajaero alleges that the

_____

[1] The complaint and caption in this case use a spelling for
Wadwha's first name that is different from the spelling in the
briefs and evidence submitted in connection with the instant
motion.  This Opinion uses the spelling from the parties' motion
papers and evidence.

defendants discriminated against her on the basis of her race, color, and gender, and retaliated against her during her time at S&P.  Defendants have moved for summary judgment on all claims asserted against them.  For the following reasons, the motion for summary judgment is granted.

**Background**

I.   Factual Background

The following facts are taken from the evidence submitted in connection with the summary judgment motion.  The facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

A.   Early Years at S&P

S&P is an international company that provides financial information and analysis.  Ajaero, who identifies herself as an African American female, began working at S&P in January 2008 as a research associate.  During the first roughly eight years that Ajaero worked at the firm, her primary supervisor was Tamara Vasquez.[2]  In this time, Vasquez awarded Ajaero several promotions, each accompanied by an increase in pay.

During the time that she supervised Ajaero, Vasquez reviewed Ajaero's job performance in an annual performance

_____

[2] Vasquez is a woman.  Her race is not clear from the parties' submissions.

review.  For the year 2012, for example, plaintiff received an overall evaluation from Vasquez of "full achievement."  For the year 2013, plaintiff received an overall evaluation of "breakthrough achievement."  Plaintiff's performance review for 2013 noted that overall Ajaero's supervisor was "very pleased with [her] exceptional performance," but that there were certain areas for improvement, including her "delivery and general communication style."  For 2014 and 2015, the plaintiff received "exceptional achievement" ratings from Vasquez in her performance reviews.

In 2016, Vasquez moved to the Product Management department and advocated for Ajaero to join her.  Ultimately, Ajaero did not join that department and instead joined the Data Stewardship department as a Senior Associate in Market Intelligence.  Plaintiff's new supervisor was the Director of Data Stewardship, Shyam Wadhwa.[3]

Like Vasquez, Wadhwa also provided Ajaero with annual performance reviews.  For the year 2017, Wadhwa gave plaintiff an overall evaluation of "full achievement" (the "2017 Review").  The 2017 Review featured some positive feedback, including that Ajaero had "done a stellar job in shortlisting vendors," but

---

[3] Wadhwa is a man.  His race is not clear from the parties' submissions.

also noted areas for improvement, such as the need to develop "day to day understanding" of data and gaps in workflows.  After the 2017 Review, plaintiff received a "standard" cost of living increase in compensation, as well as a bonus of $10,828 for 2017.

B.   Plaintiff's Initial Complaints

The events giving rise to plaintiff's claims mostly began in 2018.  During 2018, plaintiff had various problems with her work environment and raised these concerns to her supervisor. For example, at some point in 2018, plaintiff complained to Wadhwa that she "was not being paid like everyone else."  In making this complaint, she did not attribute the disparity to a protected characteristic.[4]

Plaintiff also told Wadhwa that her desk was taken away from her.  There is no evidence in the record regarding how often plaintiff worked from home, who took over the plaintiff's desk, who made the decision to remove the desk, or the races and genders of the remaining employees on the floor on which she worked.

---

[4] Plaintiff also similarly complained to S&P's Human Resources department ("HR") in 2016 that her pay was unfair.  In making this complaint, she did not attribute the unfairness to a protected characteristic and instead she "just said it was unfair."

Ajaero also complained to Wadhwa in 2018 that she was not invited on a trip to Dubai with other members of her team. At least two other team members -- Wadhwa and Amanda Grace, a white woman -- also did not go on the trip. Wadhwa and Grace were both managers at the time, unlike Ajaero. The individuals doing similar work to Ajaero who went on the trip were based in India or London. Ajaero was the only employee on her team at her level in New York.

Finally, in 2018, Ajaero complained to Wadhwa about her experience with another manager, Vinay Arora. Earlier that year, plaintiff took over a project from a colleague, Ian Hazard. When she took over the project, Ajaero did not change the metrics or value of the project, but Ajaero asserts that, for reasons that are unclear, Arora tried to "kill the project" and gave the project a dollar value of zero. Plaintiff approached Wadhwa about Arora's re-evaluation of the project because she thought that ending the project would cost S&P money and because she felt she was being treated differently from Hazard.

On March 4, 2019, Ajaero also made a report about her experience with Arora through the HR employee complaint hotline (the "HR Hotline"). In this report, Ajaero described the primary issue as "inappropriate conduct" and described the

general nature of the matter as Arora "hindering project completion."  This complaint did not assert that Arora had discriminated against Ajaero and did not make any reference to Ajaero's race, gender, or other protected characteristics.

C.   Plaintiff's 2018 Performance Review

At some point in the first quarter of 2019, Ajaero received her performance review for the year 2018 (the "2018 Review") from Wadhwa.  Although plaintiff had made the above complaints about her work environment, prior to receiving the 2018 Review, plaintiff had not made any complaint to anyone at S&P that she was being discriminated against on the basis of a protected characteristic.

In the 2018 Review, Wadhwa gave Ajaero an overall evaluation of "partial achievement."  As with the 2017 Review, the 2018 Review included some complimentary feedback, along with notes on areas for improvement, with examples for each.  The 2018 Review concluded with recommendations for Ajaero to improve her work, including:

- Focus on improving your relationship with your co-workers.  Use your knowledge and experience to impress and command during project meetings.  Go to project meetings more prepared and try to have a collaborative approach.

- Focus on gaining SQL skills and knowledge of DMS to become independent.[5]

Although the 2018 Review suggested that plaintiff improve her SQL skills, plaintiff already had significant training in SQL.  Plaintiff asked Wadhwa if she could do additional training offsite, but Wadhwa denied her request.[6]  On another occasion, however, Wadhwa allowed plaintiff's colleague, Nipun Rajan, to do offsite SQL training.  Additionally, Wadhwa allowed Rajan to train a new hire, Lalaine Yonashiro, in SQL during work hours, but instructed plaintiff not to request training from Rajan.

After the 2018 Review, plaintiff received an annual bonus for 2018 of roughly $2,700.  Wadhwa sent plaintiff her compensation statement, reflecting this bonus, on March 12, 2019.  Shortly after receiving the statement, plaintiff emailed Wadhwa, copying Vasquez, about the statement.  Ajaero stated in her email that she had "never had a bonus like this" since joining S&P; that when she moved into her role in the Data Stewardship department, she "was emphatically told [her] bonus would not be impacted"; that Wadhwa had "said more than once

---

[5] The parties do not define the terms "SQL" or "DMS."  DMS is not relevant to the instant motion.  Based on the context, SQL appears to be a programming language used at S&P.

[6] Although plaintiff's request for offsite training was denied, S&P offered internal tools to help an employee develop competence in SQL.

[she is] the hardest worker" on the team; and that in a past review, Wadhwa mentioned that his own supervisor said Ajaero was "grossly underpaid."

On or around March 14 and March 20, plaintiff met with Wadhwa to discuss the 2018 Review and her bonus.  After the second meeting, Ajaero sent Wadhwa an email stating:

> I appreciate the follow up discussion we had today. What I heard was that I need to 1.) improve stakeholder management 2.) improve consensus building 3.) Come better prepared for meetings, and 4.) Have mastery of SQL.  All of which will demand confidence from peers and stakeholders.  I agree that these attributes were not present in my projects this year. . . .

Plaintiff's email also requested additional examples of certain feedback because she felt that some of the comments in her review were subjective.  In response, on March 26, Wadhwa responded, providing additional details that he felt supported his feedback in the review and noting that he was going to invite Vasquez to their next meeting.  After this response, the plaintiff still had questions about the feedback concerning her performance.  Plaintiff then met with Wadhwa and Vasquez in April 2019 to discuss the 2018 Review further.

D.   Application to Wadhwa's Former Position

At some point in 2019, Wadhwa moved to a new position and, on April 10, 2019, Ajaero sent Vasquez an email stating that she "would like to formally apply for the data stewardship position

previously held by" Wadhwa.  On April 16, Vasquez said in an
email response to Ajaero:

> Hi Cathy, thank you for your email!  Just as a head's
> up, 0 jobs have been posted and I am evaluating what
> the needs of the team are, to determine what kind of
> structure would support the team optimally for
> success.  I am hoping to be in a position to
> articulate the roles we are posting within the next
> two weeks.

Wadhwa's position was never posted in 2019 and, in fact,
was not posted until 2021.  Although Wadhwa's position was not
posted in 2019 and although Vasquez told Ajaero that there were
no jobs available at the time of Ajaero's email, according to
Ajaero, Vasquez promoted or hired a total of ten employees
during 2019, including two that were hired outside of normal
posting procedures.  The two individuals that the plaintiff
identifies as being hired outside the normal procedures --
Lalaine Yonashiro and Supreet Ahluwalia -- are both Asian women.
Ajaero reported this information to S&P's Chief People Officer,
Dimitra Manis, and emailed a copy of Vasquez's email response to
her to Belinda Palmer, an HR representative.  Palmer affirmed
that at the time of Ajaero's email to Vasquez, there were no
posted jobs available.

E.   Complaints in Summer of 2019

In a letter dated May 2, 2019 to Manis, plaintiff's
attorney asserted that plaintiff had been discriminated on the

basis of her race and color and retaliated against at S&P.  The
letter identified several allegedly discriminatory practices
including: that Ajaero was denied economic and promotion
opportunities, that she had been excluded from the Dubai trip,
that she was required to give up her desk, that she was
discouraged from communicating her ideas, and that she was
denied opportunities to develop her SQL skills.

On August 21, Vasquez sent Ajaero a written reprimand for
taking a sick day.  The same day, Ajaero submitted a complaint
of retaliation against Vasquez on the HR Hotline.  The complaint
asserted that Vasquez was engaged in "a campaign of retaliation
and harassment" and noted three overarching complaints against
Vasquez: micromanaging behavior, denial of a salary adjustment,
and "fault finding."

Roughly a week later, on August 28, Ajaero submitted
another complaint to the HR Hotline.  This complaint was for
"harassment and bullying" and was primarily directed against
Arora, providing additional details regarding her earlier
complaint against him.

On August 29, Vasquez denied Ajaero's request for tuition
reimbursement to attend an Information Technology Finance and

Communication class.[7]  Another employee, Amy Gleason, was approved to take classes at the same school.

On September 4, Ajaero submitted a new complaint to the HR Hotline for "violation of company policies."  This complaint alleged that S&P was in violation of New York state labor laws regarding the use of a job applicant's wage and salary histories in determining that individual's wages or salary.

Ajaero filed another complaint of retaliation through the HR Hotline on September 7.  This complaint asserted that Vasquez was on a "campaign of retaliation" since Ajaero had made a written complaint to HR.  The report noted various complaints against Vasquez including her negative performance reviews of Ajaero, written reprimands, treatment of Ajaero's sick day requests, denial of tuition reimbursements, and statements about Ajaero's SQL skills.

F.   Applications to Other Positions

On September 10, 2019, Vasquez emailed the Private Equity team, including Ajaero, announcing that there would be several roles posted.  Of the positions listed in the email, Ajaero

---

[7] When Ajaero's complaints were investigated internally, the investigators determined that Vasquez had inadvertently allowed two requests for tuition reimbursement to expire when Vasquez was on vacation, but that the request was ultimately granted. Ajaero does not dispute that the tuition reimbursement was eventually granted.

applied to two -- Senior Project Manager in Customer Focus (the
"Customer Focus Position") and Manager in Private Ownership (the
"Private Ownership Position").

Ajaero applied for the Customer Focus Position on October
15.  One day before Ajaero applied, Supreet Ahluwalia, an Asian
female, was offered the position.  Based on a review of
Ahluwalia's LinkedIn profile, Ajaero felt that Ahluwalia had
less experience than she did, but Ajaero acknowledged that she
did not know all of Ahluwalia's qualifications.

Ajaero also applied for the Private Ownership Position on
October 15.  Vasquez interviewed Ajaero for the position on or
around February 26, 2020.  S&P ultimately offered the role to
Larisa Whitmore sometime in mid-2020.  Outside of Whitmore's
LinkedIn page, Ajaero was not aware of Whitmore's qualifications
for the position.  Ajaero's colleague, an Indian male, also
applied but was not selected for the position.

On October 30, 2019, Ajaero inquired about two other
positions that Vasquez had announced in her September 10 email -
- "Data Steward, Advisors" and "Data Steward, Private Equity."
In Vasquez's email, these jobs did not include posted "job IDs."
Thus, on October 30, Ajaero asked if there was a posted job ID
for either position.  In response, Vasquez said: "HI -- Not yet.
Will circulate an update once we have the remaining postings

up." At some point, Lalaine Yonashiro, an Asian female, was hired for the Private Equity Position outside the normal job posting procedures.

On November 15, Ajaero submitted another complaint to the HR Hotline for harassment and bullying. The complaint asserted that Wadhwa had belittled her work during a meeting with a client on November 8.

G.   Plaintiff's 2019 Performance Review

Vasquez evaluated Ajaero's job performance for the 2019 calendar year (the "2019 Review"). Plaintiff again received an overall evaluation of "partial achievement." The 2019 Review included both positive and negative feedback. As one example, the 2019 Review noted that Ajaero had "provided meaningful inputs into some aspects" of one project and that it was "great to see Catherine sharing her experience and knowledge with others." Regarding the same project, however, Vasquez noted that stakeholders in the project had at times complained of a "concerning lack of progress" and that Ajaero's "communication is not consistent or clear." As general feedback, Vasquez commented that "Catherine has great insights into the private equity market and user workflows and often has creative ways of thinking about our content which is great," but that "at times,

those who work with her find it challenging to engage freely in discussions where alternative ideas are being presented."[8]

After the 2019 Review, Ajaero received a bonus of $7,530, which was based in part on the review.  With this bonus, Ajaero's total salary for 2019 was $82,675.

H.    Complaints in Early 2020

On January 17, 2020, Ajaero filed a complaint for retaliation against Vasquez and Palmer through the HR Hotline. This complaint asserted that Vasquez was trying to "sabotage" plaintiff's work.  It also noted that Palmer had investigated her complaints against Vasquez in the past and requested that someone else look into this complaint since Palmer seemed to be "exasperated."

On March 19, Ajaero filed with the Equal Employment Opportunity Commission ("EEOC") a complaint against S&P of discrimination on the basis of her race, sex, and national origin and retaliation.  Also on March 19, Ajaero submitted an HR Hotline complaint of retaliation against Vasquez.

---

[8] The 2019 Review was consistent with feedback from Ajaero's colleagues in 2019, which also included both positive and negative feedback.  One coworker noted, for example, that her previous experiences working with Ajaero were "largely positive" and that Ajaero was an "approachable and friendly colleague," but that recent experiences had been "a little frustrating due to the inefficiencies and lack of clear communication."  Another coworker noted in feedback that Ajaero was "extremely pushy and rude" and that her "tone was harsh" in meetings.

I.   Plaintiff's 2020 Performance Review

Sometime during the middle of 2020, Whitmore became Ajaero's supervisor.  Whitmore completed Ajaero's performance review for 2020 (the "2020 Review").[9]  Like the 2018 Review and 2019 Review, the 2020 Review contained an overall evaluation of "partial achievement" and included both positive and negative feedback similar to that in previous reviews.  For example, the review noted Ajaero's "significant" contribution to one project, but also expressed "serious concerns regarding her inconsistent performance."  Specifically, the 2020 Review noted that "[u]nfortunately, Catherine has not been proactively managing [the project], engaging in meetings, owning the workflow, answering questions in a timely manner" and that "her level of communication with the team is extremely poor."  For another project, Whitmore commented that Ajaero's "contribution was important to the success of the project," but that "at times I wish her communication was better."

J.   Termination

S&P was experiencing declining margins, and in or around August 2020, it began looking for ways to cut costs.  As part of these cost-saving measures, over one hundred positions,

---

[9] The parties appear to agree that, although Whitmore completed this review, it was not provided to plaintiff prior to the termination of her employment.

including Ajaero's, were eliminated.  Ajaero's team purportedly used a "cost-location strategy" to achieve cost savings.  As part of this strategy, Ajaero's position was moved from the high-cost location of New York to a lower-cost location in Asia. At the time, Ajaero was the only member of her team at her level in the United States.  The others at her level were located in the Philippines and in India.

On January 26, 2021, plaintiff attended a teleconference. During this conference, Ajaero and several other employees were informed that their employment with S&P would be terminated as part of a large layoff.  Plaintiff's last day of work was March 15, 2021.

II.  Procedural History

Ajaero filed this action on September 21, 2021, asserting claims for discrimination on the basis of race, color, and/or gender and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, § 8-101, et seq.[10]  The plaintiff identifies herself as an

---

[10] In her declaration and opposition brief, the plaintiff also asserts that she was discriminated against on the basis of her national origin, but this does not appear in her complaint.  The plaintiff also does not identify her national origin in the declaration or elsewhere.

African American female.  On August 17, 2022, the case was
reassigned to this Court.  Following the conclusion of
discovery, on November 2, the defendants filed a motion for
summary judgment.  The motion was fully submitted on January 13,
2023.

In support of their motion, the defendants provided
excerpts of the depositions of plaintiff, Wadhwa, Vasquez, and
Erin Paoletti, as well as 31 exhibits.  In opposition to the
motion, the plaintiff provided only her six-page declaration and
a copy of the complaint.

The defendants also submitted a statement of purportedly
undisputed facts (the "Defendants' Statement of Facts") with
citations to their evidentiary materials in support of each
assertion.  The plaintiff's response to the Defendants'
Statement of Facts does not dispute over 30 of the defendants'
72 assertions.  For about 25 more, the plaintiff merely makes a
cursory objection to the purported fact (most often that it is
"argumentative") but offers no alternative version of the
assertion and no citation to record evidence.

The plaintiff disputes only a handful of the defendants'
factual assertions by adding a citation to evidence.  Often,
however, the cited evidence does not actually place the
defendants' assertion in dispute.  For example, plaintiff

disputes the defendants' assertion that one of the plaintiff's HR Hotline complaints did not mention discrimination, harassment, or retaliation, but she notes only that the relevant complaint, which she cites as evidence, "did not explicitly deny" that she was experiencing discrimination, harassment, or retaliation.  For several other purportedly disputed assertions, the plaintiff cites to evidence she never provided to the Court.

The plaintiff's response to the Defendants' Statement of Facts also includes a brief counter statement of material facts (the "Counterstatement").  The Counterstatement includes many assertions that either have no citation or cite only to the complaint.  It also includes several assertions that are not supported by the cited record evidence.  As one example, the Counterstatement asserts that the plaintiff once found a benefits statement that listed her salary as below the midpoint of that of her peers.  But, bafflingly, the cited evidence from plaintiff's deposition states only that one of plaintiff's complaints of retaliation was assigned to an individual named Rahim Babar to investigate internally.  Finally, like the plaintiff's responses to the defendants' assertions of fact, the Counterstatement includes citations to evidence that was never provided to the Court.

On February 16, 2023, the plaintiff was ordered to submit evidentiary materials that were cited in her opposition materials but had not been submitted to the Court.  In this Order, plaintiff was cautioned that if she did not file anything by February 21, the Court would "decide the summary judgment motion solely on the evidentiary record currently before it." Plaintiff has never responded to the February 16 Order.  She did not submit any additional evidence and did not request an extension of time to do so.

## Discussion

Summary judgment may only be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party."  Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are facts that "might affect the outcome of the suit under the governing law."  Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  A party opposing a motion for summary judgment must "go beyond [the] pleadings to show that genuine issues of fact" exist, In re

19

World Trade Center Lower Manhattan Disaster Site Litig., 758 F.3d 202, 212 (2d Cir. 2014), and "may not rest upon mere allegations or denials." Horror Inc., 15 F.4th at 241.

In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted). In the context of employment discrimination, "an extra measure of caution is merited" in granting summary judgment because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted); see also Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74 (2d Cir. 2016). Nonetheless, "[e]ven in the discrimination context a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted).

Rule 56.1 of the Local Civil Rules of the Southern and Eastern Districts of New York ("Rule 56.1")

> requires the party moving for summary judgment to submit a
> statement of the material facts that it contends are not
> genuinely in dispute . . . and requires that the opposing

party submit a statement showing which of the moving
party's factual assertions it disputes.

Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d
290, 312 (2d Cir. 2008) (citation omitted); Rule 56.1(a), (b).
It also provides that each statement by the movant or opponent
pursuant to these rules, "including each statement controverting
any statement of material fact, must be followed by citation to
evidence which would be admissible." Rule 56.1(d) (emphasis
added). "[W]here there are no citations or where the cited
materials do not support the factual assertions" in a Rule 56.1
statement, "the Court is free to disregard the assertion."
Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001)
(citation omitted).

I.   Discrimination Claims

Title VII makes it unlawful for an employer to "fail or
refuse to hire any individual, or otherwise to discriminate
against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin."
42 U.S.C. § 2000e-2(a)(1). Claims brought under Title VII are
analyzed using the familiar burden-shifting scheme adopted by
the Supreme Court in McDonnell Douglas Corp. v. Geren, 411 U.S.
792 (1973). Walsh, 828 F.3d at 74-75. To establish a prima
facie case of discrimination, a plaintiff need only demonstrate:

21

"(1) that she is a member of a protected class, (2) that she was qualified for the position . . . , (3) that she suffered an adverse employment action, and (4) can sustain a <u>minimal</u> burden of showing facts suggesting an inference of discriminatory motivation." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 311 (2d Cir. 2015).

Under Title VII, it suffices "to show that the motive to discriminate was one of the employer's motives, even if the employer had other, lawful motives that were causative of the employer's decision." <u>Lenzi v. Systemax, Inc.</u>, 944 F.3d 97, 107 (2d Cir. 2019) (citation omitted).  A plaintiff may establish an inference of discriminatory intent through various kinds of evidence.  For example, such an inference can arise based on an "employer's criticism of the plaintiff's performance in ethnically degrading terms" or an employer's "invidious comments about others in the employee's protected group." <u>Littlejohn</u>, 795 F.3d at 312 (citation omitted).  It can also arise where the plaintiff shows disparate treatment among employees that are "similarly situated to the plaintiff in all material respects." <u>Radwan v. Manuel</u>, 55 F.4th 101, 132 (2d Cir. 2022) (citation omitted).

"If the plaintiff establishes a prima facie case, a presumption of discriminatory intent arises and the burden

shifts to the employer to articulate a legitimate, non-discriminatory reason for its policy or action." Lenzi, 944 F.3d at 107 (citation omitted). "If the employer puts forth a legitimate, non-discriminatory justification, the presumption drops out of the analysis and the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." Id. at 107-08 (citation omitted).

Discrimination claims brought under the NYSHRL are "analytically identical" to Title VII claims. Id. at 107 n.7. Claims brought under the NYCHRL are analyzed using the same framework as Title VII and NYSHRL claims, Leibowitz v. Cornell Univ., 584 F.3d 487, 498 n.1 (2d Cir. 2009), but "must be reviewed independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (citation omitted). The NYCHRL does not require that a plaintiff prove an adverse employment action. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 114 (2d Cir. 2013). Rather, "the plaintiff need only show differential treatment -- that she is treated 'less well' -- because of a discriminatory intent." Id. at 110. Nonetheless, "district courts must be mindful that the NYCHRL is not a general civility code." Id. (citation omitted).

Accordingly, the plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive."  Id.

In their motion for summary judgment, the defendants identify four adverse actions on which the plaintiff appears to base her claims of discrimination: the plaintiff's performance ratings, her pay, the failure to promote her on two occasions, and the termination of her employment.  The defendants then argue that there is insufficient evidence that these actions were motivated by a protected characteristic.  In opposition, the plaintiff does not dispute that these four actions are the only possible bases for her claims and focuses her argument on attempting to muster evidence of the defendants' discriminatory intent.

Plaintiff's discrimination claims fail because plaintiff has not met the minimal burden of showing facts that give rise to an inference of discriminatory motivation and has also failed to offer evidence that the defendants' purported reasons for the four actions were pretextual.  The only evidence even conceivably relevant to discriminatory intent consists of a patchwork of isolated events over several years, each of which bears little to no connection to a protected characteristic. For example, plaintiff relies on an instance in 2015 or 2016 in which Vasquez said her hair looked "really, really, really good"

24

and on feedback in performance reviews that her communication
style was, at times, "argumentative."  Without more suggesting
that these facially neutral remarks were driven at least in part
by a discriminatory view of plaintiff's protected
characteristics, the comments are not enough to meet plaintiff's
burden.  Likewise, plaintiff's suggestions that others at S&P
were sometimes treated more favorably fail to evince
discriminatory intent because plaintiff presents no evidence
that the individuals involved were similarly situated to her in
the relevant respects.

Even assuming plaintiff satisfied her initial burden, the
defendants have proffered legitimate, non-discriminatory reasons
for each of the four actions at issue, and the plaintiff has not
provided evidence to raise a question of fact that these reasons
were pretextual.  Regarding plaintiff's performance reviews, the
defendants assert that the "partial achievement" performance
ratings reflect fair evaluations of plaintiff's job performance.
Notably, the 2018, 2019, and 2020 performance evaluations --
each completed by a different manager -- reflect similar
positive and negative feedback of the plaintiff's job
performance over three different years.  The three reviews also
appear consistent with feedback given in earlier reviews,
including one in which the plaintiff was given an overall

evaluation of "full achievement."  Plaintiff does not contend that these earlier reviews were discriminatory.  Finally, the comments in the reviews are consistent with feedback about her work from plaintiff's peers during the "360" performance review process that S&P employed.  Plaintiff puts forth no evidence (beyond the hodgepodge of minor, unconnected events addressed above) that the negative comments in the performance reviews or the overall evaluations of "partial achievement" were pretext for discrimination.

Regarding plaintiff's pay, the defendants point out that the plaintiff was the second-highest paid Senior Data Associate on the Market Intelligence team and that she earned more than all her male peers in India, Pakistan, and the Philippines. Plaintiff does not dispute these assertions and fails to adduce any evidence of a single similarly situated employee who was paid more favorably than she.

The plaintiff similarly fails to show that the defendants' reasons for declining to promote her to the Customer Focus or Private Ownership Positions were pretextual.  Defendants point out (and plaintiff does not dispute) that, before plaintiff applied to the Customer Focus Position, the position had already been offered to someone else.  Defendants also note that, although plaintiff applied and was interviewed for the Private

Ownership Position, S&P later selected another candidate, Larisa Whitmore, because Whitmore was more qualified.  Plaintiff does not offer any evidence that Whitmore was less qualified than she was for the role or that the defendants' stated reason for choosing Whitmore was pretextual.  Notably, plaintiff's Indian male colleague also applied for the role and was not selected.

Finally, plaintiff fails to show that defendants' reason for the termination of plaintiff's employment was pretextual. According to the defendants, plaintiff's employment was ended, along with scores of others', as part of a cost-saving measure through which S&P moved jobs from high-cost areas like New York to lower cost areas in other countries.  S&P presents evidence that it was facing financial difficulties, that plaintiff was the only member of her team located in the United States, and that it was cheaper to employee people in other countries like the Philippines.

Plaintiff appears to advance two arguments that S&P's rationale for the termination was pretextual, but each argument fails.  First, she contends that on the same day as her "last physical day of work," S&P sought to hire a senior director, even though plaintiff had previously expressed interest in the same position and was told no positions were available.  But the evidence the plaintiff cites for her argument does not indicate

27

or imply that S&P sought to hire anyone on plaintiff's last day of work.  Indeed, the evidence to which she points concerns her expression of interest in a position roughly two years earlier than the termination of her employment.  The last time she inquired about any position at S&P was in late 2019, still over a year before her employment ended.

Second, plaintiff argues that the defendants' justification for the termination is pretextual because the defendants have not identified specific mistakes that the plaintiff made during her employment.  This argument misses the mark.  The defendants' stated reason for the termination is not that plaintiff's job performance was poor.  In fact, the defendants assert that job performance was not even a factor in making the termination decision and that the decision was instead based entirely on cutting costs by relocating job responsibilities to cheaper areas of the world.  Thus, defendants do not need to point to mistakes made by the plaintiff during her employment, as that is irrelevant to their reason for terminating plaintiff's employment.

Plaintiff's discrimination claims fail even under the more lenient NYCHRL standards.  There is no evidence that any of the four actions above were motivated even in part by a protected characteristic.  And, even if there were such evidence,

plaintiff has not offered any evidence suggesting that the defendants' stated business reasons for the actions were pretextual.

In brief, after almost ten years without issue, plaintiff's relationships with her employer and supervisors soured after her transition to a new role in 2016.  Plaintiff has simply failed, however, to put forth any evidence suggesting that discrimination was at play.  Although the Court must draw reasonable inferences in the plaintiff's favor, the plaintiff cannot rely solely on "unsubstantiated speculation" and "must do more than simply show that there is some metaphysical doubt as to the material facts."  Bermudez v. City of New York, 790 F.3d 368, 374 (2d Cir. 2015) (citation omitted).  Because the plaintiff fails to identify any evidence suggesting discriminatory intent or supporting an argument that the defendants' stated reasons for their actions were pretextual, defendants are entitled to summary judgment on all of plaintiff's discrimination claims.[11]

II.   Retaliation Claims

In addition to forbidding discrimination on the basis of certain protected characteristics, Title VII also makes it

---

[11] The plaintiff has abandoned any claim of discrimination based on a hostile work environment.  See Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 143 (2d Cir. 2016).

unlawful for an employer "to discriminate against any of his or
her employees because he or she has opposed any practice made an
unlawful employment practice by other provisions of Title VII."
Lenzi, 944 F.3d at 112 (citation omitted).  Retaliation claims
are analyzed according to the same McDonnell Douglas burden-
shifting approach applicable to other discrimination claims.
See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 843 (2d Cir.
2013).  The standards for evaluating a retaliation claim are
"identical under Title VII and the NYSHRL."  Kelly v. Howard I.
Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d
Cir. 2013).  To make out a prima facie retaliation case under
Title VII or the NYSHRL, the plaintiff "must show that (1) [s]he
was engaged in protected activity, (2) the employer was aware of
that activity, (3) the employee suffered a materially adverse
action, and (4) there was a causal connection between the
protected activity and that adverse action."  Agosto v. N.Y.C.
Dep't of Educ., 982 F.3d 86, 104 (2d Cir. 2020) (citation
omitted); Kelly, 716 F.3d at 14.

     Once the plaintiff has established a prima facie case, "the
burden shifts to the employer to articulate some legitimate,
non-retaliatory reason for the employment action."  Zann Kwan,
737 F.3d at 845.  If the defendant does so, the plaintiff must
then show that this "non-retaliatory reason is a mere pretext

for retaliation." Id.  The plaintiff has the burden to show
that the retaliatory motive "was a but-for cause of the adverse
action and not simply a substantial or motivating factor." Id.
(citation omitted); see also Ya-Chen Chen v. City Univ. of N.Y.,
805 F.3d 59, 70 (2d Cir. 2015).

Under the NYCHRL, "the plaintiff must show that she took an
action opposing her employer's discrimination, and that, as a
result, the employer engaged in conduct that was reasonably
likely to deter a person from engaging in such action." Leroy
v. Delta Air Lines, Inc., 36 F.4th 469, 474 (2d Cir. 2022)
(citation omitted).  "[C]ourts must analyze NYCHRL claims
separately and independently from any federal ... claims,"
because the NYCHRL is to be construed "broadly in favor of
discrimination plaintiffs, to the extent that such a
construction is reasonably possible." Mihalik, 715 F.3d at 109
(citation omitted).

Although the plaintiff does not clearly articulate her
retaliation theory, she appears to rely in large part on the
complaints she made to Wadhwa in 2018 prior to receiving the
2018 Review.  At the outset, these complaints are not protected
activity under the applicable statutes because the plaintiff
never attributed these complaints to a protected characteristic.
Thus, to the extent she relies on complaints she made about her

work environment that did not clearly identify a protected
characteristic, the plaintiff's claims fail.

Based on the record there may be roughly five to ten
instances of protected activity, beginning with the letter from
plaintiff's attorney on May 2, 2019 and ending with the March
19, 2020 EEOC charge and HR Hotline complaint.  It is
unnecessary to parse these instances of potentially protected
activity on a more granular level, however, because plaintiff
again fails to demonstrate that defendants' stated reasons for
any allegedly retaliatory actions that followed them were
pretextual.

The defendants identify a handful of potential theories of
retaliation based on: the plaintiff's performance evaluations
and pay, the failure to promote the plaintiff, and the
termination of plaintiff's employment.  As explained above,
plaintiff has not offered any evidence that the defendants'
reasons for any of these actions were pretextual.

The plaintiff cursorily suggests in a single sentence that
she may have other actionable theories based on the defendants
denying her access to education and issuing her reprimands in
2019.  These theories fail.  The first theory appears to be
based on defendants' refusal to allow plaintiff to receive SQL
training offsite or defendants' refusal to reimburse plaintiff's

tuition for a class in information technology finance and
communication.  Defendants' denial of offsite SQL training
occurred prior to any protected activity.  Further, although
plaintiff was denied offsite SQL training, S&P offered internal
training tools.  Regarding the reimbursement, plaintiff concedes
that her reimbursement request was ultimately granted.
Defendant explains that the original failure to grant the
request was an inadvertent oversight that occurred while Vasquez
was on vacation.  Plaintiff offers no evidence that this
explanation for the initial oversight was pretextual.

The second theory also fails.  Plaintiff again provides no
evidence about the circumstances surrounding the reprimands to
suggest that the reprimands were inappropriately issued as
pretext for retaliation.  Indeed, plaintiff's only evidence of
this purported "collection of reprimands" is a single sentence
in her declaration: "On August 21, 2019, Tamara Vasquez sent me
a written reprimand for taking a sick day."  Even assuming
plaintiff received this reprimand, there is no evidence to
suggest that it was given in retaliation for protected activity.

Finally, plaintiff's retaliation claims fail even under the
more lenient standards of the NYCHRL.  Even under these more
generous standards, plaintiff has not presented sufficient
evidence that any of the conduct complained of was caused by her

protected activities, nor that the defendants' stated reasons for the conduct were pretextual.

## Conclusion

The defendants' November 2, 2022 motion is granted.  The Clerk of Court is directed to enter judgment for the defendants and close the case.

Dated:    New York, New York
          March 7, 2023

_____
DENISE COTE
United States District Judge

34